## JOHNSON *a.* CONGER.

*Supreme Court, First District; General Term, Nov.,* 1861.

SPECIFIC PERFORMANCE.—COVENANT TO SUBMIT TO ARBITRATION.

A court of equity can compel the specific performance of an absolute covenant to renew a lease at a rent to be fixed by arbitrators.

If the defendant in such case declines to submit to arbitration, the court will fix the rent, or direct a renewal at the former rate.

Appeal from an order granting an injunction.

This action was brought by Jeremiah W. Johnson against Abraham B. Conger and Mary R. Conger, his wife, to obtain the specific performance of a covenant to execute a renewal of a lease.

The plaintiff was the lessee of the premises No. 25 Catharine-street, in the city of New York, under a lease with covenants of renewal, and this action was brought to compel the defendants to execute a renewal lease and for an injunction. One Henry Rutgers, on the 2d day of February, 1818, made a lease of the premises in question to the plaintiff, from the 1st day of February of that year, for 21 years, at a rent of $100 per year. This term expired on the 1st day of February, 1839. The lease contained covenants for two renewals of 21 years each. The language of the covenant was, that at the expiration of the term to be granted by such renewed lease, as aforesaid, he would grant a " second renewal" of such lease for a further term of 21 years. Henry Rutgers died before the expiration

of the first term. By his will he devised the income of the premises in question to Catharine Rutgers Hedges, his niece, for life, and after her death he devised the same in fee to her issue. On the 25th day of May, 1831, Catharine R. Hedges died, leaving two children, Mary Rutgers McCrea Hedges and Catharine Ann Hedges. On the 26th day of July, 1831, their father, Timothy Hedges, was appointed their guardian, who, under an order of the then Court of Chancery, executed a renewal lease of the said premises for 21 years, at a rent of $325 per annum, with a covenant for a further renewal of 21 years. In the month of November, 1836, Abraham B. Conger married Mary Rutgers McCrea Hedges. The infants came of age in the year 1846, and Catharine Ann Hedges conveyed her undivided half of the premises in question to Mrs. Conger, subject to the covenants in the said lease. The last lease contained a covenant for such rent under the last renewal, " as should be agreed upon by them respectively : but in the event of their not agreeing upon such rent, each party shall choose a disinterested person to ascertain the same." Plaintiff averred his readiness to agree or to arbitrate the said rent, but that defendants refused either to agree upon a rent, or to arbitrate, or to grant a further renewal of the lease, and prayed that a decree may be made that the defendants specifically perform the covenant in said lease contained.

The defendants answered, 1. That they have no knowledge that the plaintiff was ready or willing to agree with the defendants as to the rent.

2. That if plaintiff was ready or willing to arbitrate the rent, he did not make it known before the expiration of the lease.

3. That no such offers as were alleged in the complaint were made until the 23d of February, 1860.

4. That because no election was made before the expiration of the lease for a renewal, the defendants claim that they were not bound to renew it.

5. That they did not refuse to grant a renewal or to arbitrate the rent, until after the expiration of the lease.

An injunction was granted to the plaintiff, defendants opposing, by the court below, August 22, 1860, from which the defendants appealed.

*Lucien Birdseye,* for the appellants.—I. By the language of the lease, the covenant for the renewal is binding only on the lessors, and not upon the lessees. The covenant for renewal is, therefore, a covenant by the lessor to renew at the option of the lessee.

II. In such case the action will not lie, and the right of action is not created until the party who is to exercise the option has exercised the option and given notice thereof to the other party. The rule on this subject is this. If the matter to be alleged in the pleading, and on which the right of action depends, be more properly within the knowledge of the plaintiff than of defendant, the declaration must state that the defendant had notice thereof. (1 *Step. N. P.*, 380.) Or again, where the matter is in the privity and knowledge of the plaintiff alone (as is the case here), there must be an averment of notice. (Holmes *a.* Twist, *Hob.*, 51, in the Exch. Ch., on error from K. B.) Or again, if a condition be to do a thing on the performance of an act by the feoffee or obligee, which is secret and lies only in his breast, the obligee must give notice thereof. (See 3 *Comy. Dig.*, tit. *Condition*, 1. 8, and cases there cited. Particularly these, viz., Hall *a.* Hemmings, *Cro. Jac.*, 432 (1 *Roll. Abr.*, 263); Holmes *a.* Twist, *Hob.*, 51; 5 *Co.*, 23, b. See, also, Douglass *a.* Howland, 24 *Wend.*, 35, 49, per COWEN, J.; Clough *a.* Hoffman, 5 *Ib.*, 499; Sage *a.* Hazard, 6 *Barb.*, 179; Vyse *a.* Wakefield, 6 *M. & W.*, 442 (8 *Dow. Pl.*, 377, and 4 *Jur.*, 509); S. C., 7 *M. & W.*, affirmed on error.)

III. In the present case such notice must be given prior to the expiration of the term created by the former lease, so that "at the expiration" of that term the new lease may take effect.

IV. But even if the notice of the election to take the new lease were given in due time, the present action cannot be maintained; for it is merely a suit to compel the defendants to perform specifically an agreement to submit to arbitration. Such a suit a court of equity will not entertain. (Greason *a.* Keteltas, 17 *N. Y.*, 491, 496, and cases cited.)

V. The injunction should not have been granted. It being merely to restrain defendants from taking summary proceedings to recover their property, and there being no allegation of fraud on the part of the defendants. (Hyatt *a.* Burr, 8 *How.*

*Pr.*, 168.    See cases collected in *Voorhies' Code*, 5 ed., 262, note *E.*)

VI. The present action cannot be maintained to recover damages for a breach of the covenant to grant a new lease; for no breach of that covenant is averred.

*James R. Whiting*, for the respondent.—By the terms of the covenant the tenant is entitled to the renewed lease.

II. The covenant is not void for the want of mutuality—even were it so in fact.    A covenant by one party to do an act founded upon a good consideration is binding upon the other, although there be no mutuality.

III. In this case the covenants are, by their very language, mutual.    The parties bind themselves "mutually," the lessor to give and the lessee to take the lease.

IV. No notice was necessary by the tenant—he had the right to take—and if the lessor wanted more rent it was his business to take the necessary steps for the ascertainment of the rent.

V. The mode of ascertaining the rent was provided for by the covenant.    *Non constat* the tenant was dissatisfied with the old rent.    If the lessor wanted more it was his duty to demand it; and if the tenant refused to pay it, then to arbitrate, as provided in the covenant.

VI. The idea of option and notice, contended for by the appellants, and the law founded upon it, have no application in this case.

VII. The contract to arbitrate the amount of rent is valid, and will be enforced in a court of equity.    Such a covenant is not a covenant to arbitrate as to a right, but as to a mode of compensation for a conceded right.    The cases which establish the doctrine that courts will not compel an arbitration, are all cases where questions of law may be involved.    Here there is none. This principle is well settled. (Avery *a.* Scott, 20 *Eng. L. & Eq.*, 327; Goldstone *a.* Osborne, 2 *C. & P.*, 549.)

VIII. The case of Greason *a.* Keteltas (17 *N. Y.*, 491) concedes the remedy we have adopted as the proper one.

IX. The renewal should be decreed under the circumstances; and if the defendants will not agree to an arbitration, they should be ordered to renew the lease at the same rent reserved in the last lease.

By THE COURT.*—INGRAHAM, P. J.—We are of the opinion that the lease compels a renewal, and that one party is bound to give and the other to accept such renewal. The rent, if changed, is to be fixed by arbitrators chosen by the parties, and no notice was necessary from the lessee before the expiration of the lease.

We think a court of equity can compel the parties to perform this covenant of renewal. If the landlord declines to name an arbitrator on his part, the same can be ascertained by the court, or the lease renewed at the old rent.

What was said in Greason *a.* Keteltas (17 *N. Y.*, 491) was not necessary to the decision of that case, and can hardly be considered as conclusive in this case.

This case also differs from the one cited, in that the obligation here to renew is absolute; in the other it was at the option of the lessee.

The order appealed from should be affirmed.

---

## LANSING *a.* STONE.

*Supreme Court, First District; General Term, Jan.,* 1862.

COMMON LAW IN THIS STATE.—EVIDENCE.—ADMISSIONS.—PRE
SUMPTION OF ORDINARY CARE.

*It seems*, that the English statute (6 *Anne*, ch. 3: re-enacted, 14 *George III.*) which provides that no action, suit, or process shall be had against any person in whose building or on whose estate any fire shall accidentally begin, for any damage thereby,—is in force in this State as part of the common law brought with them by the colonists.

In an action by a tenant against his landlord for damages to the furniture of the former, by negligently setting the leased premises on fire, evidence on behalf of the tenant that the landlord had obtained a policy of insurance on the premises, and received the amount mentioned therein is properly rejected.

In regard to the performance of a lawful act, the presumption exists that at least ordinary care was used.

Declarations out of court are not to be construed as admissions, by the speaker, of any thing not within the popular meaning of the language employed.

---

* Present, INGRAHAM, P. J., CLERKE and SUTHERLAND, JJ.